UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07940-RGK (SSx) | Date | April 22, 2011 |
|---|---|---|---|
| Title | UNITED STATES ex rel. SCOTT v. ACTUS LEND LEASE et al. | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**  (IN CHAMBERS) Order Re: HD Supply, Inc.'s Motion to Dismiss (DE 101)

## I.  INTRODUCTION

On December 2, 2008, Robert Scott ("Scott")[1] and Luisa Jaro ("Jaro")[2] (collectively "Relators") filed a Complaint against Actus Lend Lease, LLC and its related parties ("Actus Lend Lease"), The Home Depot, Inc. and Home Depot U.S.A., Inc. (inclusively "Home Depot"), and HD Supply, Inc., HD Supply Facilities Management, and Maintenance Warehouse America Corp. (inclusively "HD Supply") (collectively "Defendants"), alleging on behalf of themselves and the United States of America ("Government") violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*. On April 8, 2010, the Government, a real party in interest, filed a Notice of Non-Intervention, based on the need to conduct further investigation before deciding whether to intervene.

On September 10, 2010, Relators filed a First Amended Complaint ("FAC"), alleging, under the FCA, violations of the Buy American Act of 1988 ("BAA"), 41 U.S.C. § 10a, *et seq.*, as modified by the Trade Agreements Act of 1979 ("TAA"), 19 U.S.C. § 2501 *et seq.* Together, the BAA and TAA require that all materials used in the construction of any public building or work in the United States must be made in the United States or in designated countries. Specifically, Relators claim that Defendants knowingly violated the BAA and TAA by submitting false claims to the Government for: (1) foreign

---

[1] Scott joined Actus Lend Lease as Project Manager in 1994 and worked as Vice President of Construction from 2000 to 2006. (FAC ¶¶ 9–10).

[2] Jaro worked for Actus Lend Lease as the Regional Controller for Hawaii from 2004 to 2006. (FAC ¶¶ 11–12).

materials from non-designated countries used in the construction and renovation of military housing under the Military Housing Privatization Initiative ("MHPI"); and (2) products from non-designated countries sold to the Government through United States General Services Administration ("GSA") schedule contracts and other similar contracts.

Based on these alleged violations, Relators assert the following *qui tam* FCA claims: (1) Presentation of a False or Fraudulent Claim under 31 U.S.C. § 3729(a)(1) against all Defendants; (2) Use of a False or Fraudulent Statement or Record under 31 U.S.C. § 3729(a)(2) against all Defendants; (3) Presentation of Reverse False Claims under 31 U.S.C. § 3729(a)(7) against Actus Lend Lease; (4) Presentation of a False or Fraudulent Claim under 31 U.S.C. § 3729(a)(1)(A) as amended by the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No 111-21, 123 Stat. 1617, against all Defendants; (5) Use of a False or Fraudulent Statement or Record under 31 U.S.C. § 3729(a)(1)(B) as amended by FERA against all Defendants; and (6) Presentation of Reverse False Claims under 31 U.S.C. § 3729(a)(1)(G) as amended by FERA against Actus Lend Lease.

## II.     FACTUAL BACKGROUND

In the FAC, Plaintiff alleges the following facts against HD Supply:

HD Supply, Inc. is a wholesale distribution company that distributes products and sells installation services to home builders, contractors, and government entities. (FAC ¶ 24). HD Supply Facilities Management, which is wholly owned by HD Supply, Inc., is a large provider of maintenance, repair, and operations products. (FAC ¶ 25). A GSA schedule is a contract with the GSA that allows contractors to sell the items identified in the contract to federal government customers. (FAC ¶ 120). Once a contractor is awarded a GSA schedule contract, any federal government agency can purchase supplies that are on the GSA schedule directly from the contractor at a pre-agreed price, in accordance with other contractual terms and conditions specified in the GSA schedule contract. (FAC ¶ 121).

GSA schedule contracts are subject to the TAA, a statute that modifies the BAA. Federal Acquisition Regulation ("FAR"), 48 C.F.R. § 52.225-5. Together, the BAA and TAA require that all materials used in the construction of any public building or work in the United States must be made in the United States or in certain "designated countries." 42 U.S.C. § 10b; 19 U.S.C. § 2512(a)(1)(A). In addition to agreeing to sell only TAA-compliant items, GSA contractors "must certify that all items offered for sale on the Schedule are compliant with the [TAA]." (FAC ¶ 122).

In September 2002, the GSA awarded Maintenance Warehouse America Corp., a subsidiary of The Home Depot, Inc. at the time, with GSA schedule contract GS-06F-0080M, which was in effect until September 2010. (FAC ¶ 182). Maintenance Warehouse America Corp. has merged into HD Supply Facilities Management, which is its successor-in-interest with respect to matters alleged in the FAC. (FAC ¶ 182). HD Supply Facilities Management sells products through its online website and through catalog orders made by phone or fax. (FAC ¶¶ 186–87). HD Supply Facilities Management also sells products under its GSA schedule contract through Government websites known as GSA Advantage! and DOD EMall. (FAC ¶¶ 126, 128, 188). HD Supply Facilities Management currently has over 9,000 items listed for sale on GSA Advantage! (FAC ¶ 188).

A significant portion of the items offered for sale by HD Supply Facilities Management do not comply with the TAA. (FAC ¶ 191). At least half the products HD Supply Facilities Management offers for sale are produced in China and other non-designated countries. (FAC ¶¶ 197, Exs. J, P, Q, R). Despite knowing that a high percentage of the items were not TAA-compliant and that it had promised and certified in its contract that it would sell only U.S.-made or designated-country end products, HD Supply Facilities Management "comingled its TAA-compliant items and non-TAA-compliant items on its website and its catalogs without distinction." (FAC ¶ 193). At all relevant times, HD Supply

Facilities Management's individual product descriptions, both online and in its catalog, failed to indicate which items were excluded from HD Supply's GSA schedule contract or to include country-of-origin information. (FAC ¶ 194).

During the contract period, HD Supply Facilities Management began directing Government customers to Open Market SKU lists linked to its website, which purported to identify all non-TAA-compliant products. (FAC ¶¶ 195–96). The lists "misrepresented the TAA-compliance status of items offered for sale." (FAC ¶ 209). Although HD Supply Facilities Management described the lists as "a complete listing of GSA non-contract/open market products," it failed to include many non-TAA-compliant items on the lists. (FAC ¶¶ 210–11, Ex. S).

Pursuant to the foregoing scheme, HD Supply systematically submitted claims for payment to the Government for products that failed to comply with the TAA. (FAC ¶¶ 3, 113, 193–94, 209–11, 213, 221). Relators have provided a spreadsheet listing forty-three representative examples of such claims. (FAC Ex. U). HD Supply also followed the same practices with respect to similar contracts, such as the Air Force Non-Appropriated Funds ("AFNAF") contract F41999-06-D-6105, AFNAF contract F419999-97-D-6146, GSA schedule contract GS-06F-0006J, and GSA schedule contract GS-06F-00029N (FAC ¶ 223–25).

After HD Supply, Inc. acquired HD Supply Facilities Management, HD Supply Facilities Management "had one or more officers in common with HD Supply, Inc." (FAC ¶ 184). Also, HD Supply generally "dominated, directed, managed and controlled the operations of HD Supply Facilities" and "authorized and approved" HD Supply Facilities Management' conduct in making false claims and false statements to the Government. (FAC ¶ 184).

On January 23, 2011, Relators filed a Stipulation of Partial Voluntary Dismissal Subject to Consent of Court and Attorney General ("Stipulation of Partial Voluntary Dismissal"), stating that they "[did] not intend to pursue FCA violations by Home Depot or HD Supply based on the . . . MHPI contracts referenced in the FAC." (Docket Entry 100). On January 24, 2011, HD Supply filed a Motion to Dismiss the Case. On February 27, 2011, Relators filed a Notice of Dismissal pursuant to Federal Rule of Civil Procedure ("Rule") 41(a)(1) as to Maintenance Warehouse America Corp.

Presently before the Court is HD Supply's Motion to Dismiss the Case ("Motion"), pursuant to Rules 12(b)(6) and 9(b). For the following reasons, the Court **DENIES** the Motion.

### III.   JUDICIAL STANDARD

A party may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, a court must assume that allegations in the challenged complaint are true and construe the complaint in the light most favorable to the non-moving party. *Barker v. Riverside Cnty. Office of Edu.*, 584 F.3d 821, 824 (9th Cir. 2009); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, the court need not accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009).

To survive a motion to dismiss for failure to state a claim, a pleading must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Iqbal*, 129 S. Ct. at 1949; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is facially plausible when there are sufficient factual allegations from which to draw a reasonable inference that a defendant is liable for the alleged misconduct. *See Iqbal*, 129 S. Ct. at 1949. Traditionally, Rule 12(b)(6) motions have been "viewed with disfavor" and rarely granted because of the liberal policy for amendment and the lesser role pleadings play in federal practice. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to

support a cognizable legal theory. *Mendiondo v. Centinella Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Claims alleging fraud or mistake must also satisfy Rule 9(b)'s heightened pleading requirement. Fed. R. Civ. P. 9(b). Dismissal of a complaint for failure to comply with Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107–08 (9th Cir. 2003). Rule 9(b) requires a party to plead "with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). Such allegations "must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2002) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

## IV. <u>DISCUSSION</u>

In light of Relators' Stipulation of Partial Voluntary Dismissal of Relators' MHPI claims, HD Supply moves to dismiss the entire FAC as to HD Supply under Rules 12(b)(6) and 9(b). Specifically, as to Relators' remaining GSA schedule contract claims, HD Supply asserts that: (1) Relators have failed to plead a "false claim for payment" under the FCA; and (2) Relators have failed to allege an actionable "false statement." The Court disagrees.

Based on Rules 12(b)(6) and 9(b), the Court analyzes each of HD Supply's arguments below.

    1.    *<u>False Claims</u>*

HD Supply claims that Relators fail to allege an actionable false claim under the FCA. The Court disagrees.

        a.    *Rule 12(b)(6)*

To establish an explicitly false claim under the FCA, the plaintiff bears the burden of proving that: (1) the defendant presented or caused to be presented for payment or approval a claim; (2) the claim was false or fraudulent; and (3) the defendant did so knowingly. 31 U.S.C. § 3729(a)(1), *as amended* § 3729(a)(1)(A); *United States v. Mackby*, 261 F.3d 821, 826 (9th Cir. 2001). Proof of damage to the Government is not required. *Bly-Magee*, 236 F.3d at 1017; *United States ex rel. Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991).

First, the defendant must have presented, or caused to have been presented, a claim. The FCA defines a "claim" to include any request for payment. 31 U.S.C. § 3729(c). Relators allege that HD Supply systematically submitted claims for payment of products sold to the Government under GSA schedule contract GS-06F-0080M and other similar contracts. (FAC ¶¶ 3, 113, 193–94, 209–11, 213, 221). Relators provide representative examples of such claims for payment. (FAC Ex. U).

Second, the claim must have been false or fraudulent. 31 U.S.C. § 3729(a)(1), *as amended* § 3729(a)(1)(A). In the Ninth Circuit, goods or services that do not conform to contract specifications, laws, or regulations are considered false or fraudulent. *E.g.*, *Mackby*, 261 F.3d at 821; *United States v. Nat'l Wholesalers*, 236 F.2d 944 (9th Cir. 1956). Relators allege that HD Supply's claims for payment under GSA schedule contract GS-06F-0080M and other similar contracts were false because the products sold did not comply with the TAA, as the products were not made in the United States or in designated countries. (FAC ¶ 191). Relators are not required to identify representative examples of false claims to support every allegation, but the "use of representative examples is one means of meeting the

pleading obligation." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Relators have provided a spreadsheet listing forty-three representative examples of such false claims. (FAC Ex. U). Each of the forty-three examples specifically identify each claim's Contract ID No., Contracting Agency, Date, Contract Amount, Item Sold, and Non-TAA Country of Origin. (FAC Ex. U). Additionally, Relators identify the non-TAA-compliant items that were falsely excluded from Home Depot's Open Market SKU lists, which purported to identify all non-TAA-compliant products. (FAC ¶¶ 209, 214).

HD Supply claims that Relators fail to allege a false claim for payment because HD Supply's claims for payment did not explicitly misrepresent compliance with the TAA, but this argument is unavailing. A false claim "can take many forms, the most common being claim for goods or services not provided." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002). A typical example is a defendant that charges the Government for more than what was provided. *See, e.g.*, *United States v. Northrop Corp.*, 59 F.3d 953 (9th Cir. 1995). Requesting payment for goods or services that are of lesser quality than those for which the Government contracted or that do not meet contractual requirements or specifications can also constitute false claims for payment. *See, e.g.*, *United States v. Mackby*, 261 F.3d 821 (9th Cir. 2001); *United States ex rel. Lindenthal v. General Dynamics Corp.*, 61 F.3d 1402, 1410 (9th Cir. 1995); *United States v. Nat'l Wholesalers*, 236 F.2d 944 (9th Cir. 1956). Moreover, the other courts that have addressed this narrow issue held that claims submitted to the Government in violation of contractual BAA or TAA provisions and certifications are actionable under the FCA. *See, e.g.*, *United States v. Rule Indus., Inc.*, 878 F.2d 535 (1st Cir. 1989); *United States ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 37 (D.D.C. 2010). Relators specifically allege that HD Supply was required by statute, contract, and certification to comply with the TAA in selling products to the Government. (FAC ¶¶ 191–92). Relators claim that instead, HD Supply submitted claims for unallowable products, which were completely different from what the Government had agreed to pay for. (FAC ¶¶ 3, 113, 213, 221, 225, Ex. U). Hence, Relators have adequately pleaded false claims for payment.

Third, the defendant must have presented the false claim knowingly. The FCA defines "knowingly" to include actual knowledge, deliberate ignorance, or reckless disregard. 31 U.S.C. § 3729(b)(1)(A). Relators allege that HD Supply knowingly presented the false claims for payment to the Government. (FAC ¶ 192). Relators assert that although HD Supply knew that its GSA schedule contract required it to exclude all non-TAA-compliant items from sale to the United States and that it had certified that it would only offer products from the Government and designated countries, HD Supply knowingly failed to institute any mechanism to block the sale of non-TAA-compliant items to the Government through GSA schedule contract GS-06F-0080M and other similar contracts. (FAC ¶ 192). During the time period HD Supply was owned by The Home Depot, Inc., prior to the August 2007 sale, HD Supply used Home Depot's sourcing chain, which involved China and other non-designated countries. (FAC ¶ 189).

Assuming Relators' allegations are true, as is required for Rule 12(b)(6) motions, Relators have stated a claim for false claims under the FCA.

Additionally, Relators state a cause of action for false claims under the FCA based on the implied false certification theory. To establish an implied false certification under the FCA, the plaintiff must prove that: (1) the defendant explicitly undertook to comply with a law, rule, or regulation that is implicated in submitting a claim for payment; (2) the defendant submitted the claim; and (3) the defendant was not in compliance with that law, rule, or regulation. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

First, Relators allege that HD Supply undertook to comply with the TAA in order to obtain GSA schedule contract GS-06F-0080M and other similar contracts. (FAC ¶¶ 122–23, 127, 192). Relators state

that HD Supply also explicitly certified that the products it was offering for sale were either U.S.-made or designated-country-made end products as defined by the TAA. (FAC ¶¶ 122, 124, 192). Second, Relators allege that Home Depot U.S.A., Inc. submitted claims to the Government under GSA schedule contract GS-06F-0080M and other similar contracts. (FAC ¶¶ 3, 113, 213, 221, Ex. U). Third, Relators state that Home Depot U.S.A., Inc. submitted the claims even though it had not complied with the relevant contract, statute, or regulations by selling products from China and other non-designated countries. (FAC ¶¶ 3, 113, 213, 221, Ex. U).

Thus, Relators have sufficiently alleged the elements necessary to plead both an implied false certification claim or an explicitly false claim under the FCA.

b. Rule 9(b)

Relators have also satisfied Rule 9(b)'s heightened pleading requirement. The FCA is an anti-fraud statute. 31 U.S.C. § 3729(a); *United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968); *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2002). As such, in the Ninth Circuit, complaints brought under the FCA must fulfill the requirements of Rule 9(b). *Bly-Magee*, 236 F.3d at 1018. Defendants accused of defrauding the federal government have the same protections as defendants accused of fraud in other contexts. *Id*. Rule 9(b) requires a party to plead "with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

Relators allege that HD Supply submitted false claims during the time periods specified in GSA schedule contract GS-06F-0080M, valid from September 2002 to September 2010, and in other similar contracts. (FAC ¶¶ 3, 113, 213, 221). Where a party pleads a scheme to submit false claims instead of one fraudulent transaction, "use of representative examples . . . is one way of meeting the pleading obligation" under Rule 9(b). *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). In the FAC, Relators identify forty-three representative examples of false claims by date. (FAC Ex. U).

Relators state that the locations of the false claims were HD Supply's, Inc.'s requests to the Government for payments under the GSA schedule contract. (FAC ¶¶ 3, 113, 213, 221).

In terms of the specific content, Relators allege that HD Supply submitted false claims for payments of products that were non-TAA-compliant and thereby not allowable under the terms of the various contracts. (FAC ¶¶ 3, 113, 213, 221). Relators further allege that the claims were false because HD Supply had previously certified that it would offer only products made in the United States or in designated countries but later made claims for items that it knew to be non-compliant. (FAC ¶¶ 3, 113, 127, 192, 213, 221, Ex. U).

Finally, Relators allege that the parties who made, or caused to be made, false claims and statements are HD Supply Facilities Management and HD Supply, Inc. (FAC ¶¶ 3, 24, 25, 113, 182, 184, 221). If the defendant is a corporation, Rule 9(b) requires a claimant to identify the corporate party involved, but when particular evidentiary matters are exclusively within the defendant's knowledge, the claimant is not required to identify specific individuals who may have engaged in the alleged fraudulent activities. *See United States ex rel. Bledsoe v. Comm'y Health Sys., Inc.*, 501 F.3d 493, 506 (6th Cir. 2007); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *Strom ex rel. United States v. Scios, Inc.*, 676 F. Supp. 2d 884 (N.D. Cal. 2009); *United States ex rel. Roby v. Boeing Co.*, 184 F.R.D. 107, 110–11 (S.D. Ohio 1998). Because Relators are former employees of Actus Lend Lease, not employees of HD Supply, they lack insider knowledge as to the allegedly fraudulent claims. (FAC ¶¶ 9–12). As such, by naming the corporations involved in the alleged fraud, Relators satisfy the party-identification pleading requirement.

Thus, Relators' FAC describes the time, place, content, and parties to the alleged false claims with sufficient particularity under Rule 9(b).

2.  *False Statements*

HD Supply claims that Relators fail to allege an actionable false statement under the FCA. The Court disagrees.

a.  Rule 12(b)(6)

To establish a false statement under the FCA, the plaintiff bears the burden of proving that: (1) the defendant made or used a record or statement; (2) the record or statement was false; (3) the defendant knew it was false; and (4) the record or statement was material to the false or fraudulent claim. 31 U.S.C. § 3729(a)(2), *as amended* § 3729(a)(1)(B). Proof of damage is not necessary to establish liability. *Bly-Magee v. California*, 236 F.3d 1014, 1017 (9th Cir. 2001); *United States ex rel. Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991).

First, the defendant must have made or used a record or statement. A variety of types of statements or records may support the cause of action. *See, e.g.*, *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 530–31 (10th Cir. 2000); *United States ex rel. Lamers v. City of Green Bay*, 998 F. Supp. 971, 986, 989 (E.D. Wis. 1998), *aff'd*, 168 F.3d 1013 (7th Cir. 1999). Relators allege that HD Supply's website purported to identify all non-TAA-compliant products. (FAC ¶¶ 195–96). On its website, HD Supply described its Open Market SKU lists as "a complete listing of GSA non-contract/open market products." (FAC ¶ 210).

Second, the statement or record must have been false. HD Supply's website described its Open Market SKU lists as "a complete listing of GSA non-contract/open market products." (FAC ¶ 210). Relators allege that the Open Market SKU lists failed to include many non-TAA-compliant items. (FAC ¶ 211, Ex. T). Relators claim that because HD Supply's website affirmatively "misrepresented the TAA-compliance status of items offered for sale by HD Supply," HD Supply's statement about its Open Market SKU lists was false. (FAC ¶ 109). Hence, Relators have successfully pleaded a false statement.

Third, the defendant must have made or used the false record or statement knowingly. The FCA defines "knowingly" to include actual knowledge, deliberate ignorance, or reckless disregard. 31 U.S.C. § 3729(b)(1)(A). Relators allege that at all times relevant to the FAC, "HD Supply knew that a large proportion of the products it offered for sale were non-TAA compliant." (FAC ¶ 192). Relators contend that HD Supply knew that the GSA schedule contract required it to exclude all non-TAA-compliant items from sale to the Government, and that it had certified that it would only offer end products from the United States and designated countries. (FAC ¶ 192). Relators state that despite having this knowledge, HD Supply "knowingly failed to institute any mechanism to preclude or block the sale of non-TAA-compliant items to the United States via its GSA schedule contract." (FAC ¶ 192).

Fourth, the false record or statement must be material to the false or fraudulent claim. The FCA defines "material" to mean "having a natural tendency to influence, or being capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). To establish materiality in the Ninth Circuit, "'the question is merely whether the false certification—or assertion, or statement—was relevant to the government's decision to confer a benefit.'" *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 997 (9th Cir. 2010) (quoting *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d. 1166, 1173 (9th Cir. 2006)). Moreover, it is the "potential effect" of a false statement that determines materiality, not whether it actually influenced the United States to make a payment. *United States v. Bourseau*, 531 F.3d 1159, 1171 (9th Cir. 2008). Relators allege that compliance with the BAA and TAA is required by statute, regulation, and contract. (FAC ¶¶ 113–17). Federal statutes and regulations

prohibit the government from purchasing non-compliant items: (1) the BAA, 41 U.S.C. § 10a, requires that "only [BAA-compliant items] . . . shall be acquired for public use"; (2) the TAA, 19 U.S.C. § 2512(a)(1)(A), requires "the President . . . [to] prohibit the procurement . . . [of non-TAA-compliant items]"; and (3) the FAR, 48 C.F.R. § 52.225-5, requires a "[c]ontractor . . . [to] deliver . . . only U.S.-made or designated country end products." Compliance with such regulations is a condition of payment. (FAC ¶¶ 123–24). As such, HD Supply's alleged failure to comply was material to the Government's payments to HD Supply.

Thus, Relators have sufficiently alleged the elements necessary to plead false statements under the FCA.

                b.       Rule 9(b)

Relators have also satisfied Rule 9(b)'s heightened pleading requirement. Because the FCA is an anti-fraud statute, in the Ninth Circuit, complaints brought under the FCA must fulfill the Rule 9(b)'s requirements. *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2002). Rule 9(b) requires a party to plead "with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

Relators allege that HD Supply's false statements took place during the course of GSA schedule contract GS-06F-0080M, valid from September 2002 to September 2010, and the relevant time periods specified in other similar contracts. (FAC ¶¶ 3, 113, 213, 221). In terms of the location, Relators claim that HD Supply made false statements in its Open Market SKU lists, which purported to identify all non-TAA-compliant items HD Supply sold. (FAC ¶¶ 209–11, Ex. T). As to the manner, Relators allege that HD Supply's Open Market SKU lists misrepresented the TAA-compliance status of items offered for sale by failing to include many non-TAA-compliant items HD Supply actually sold to the Government. (FAC ¶¶ 209–11, Ex. T). As to the parties, Relators allege that HD Supply Facilities Management and The HD Supply, Inc. made, or caused to be made, the false statements. (FAC ¶¶ 3, 24, 25, 113, 182, 184, 221).

Thus, Relators' FAC describes the time, place, content, and parties to the alleged false statements with sufficient particularity under Rule 9(b).

Based on Rules 12(b)(6) and 9(b), Relators' FAC should not be dismissed.

## V. CONCLUSION

In light of the foregoing, HD Supply's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | slw |